Welles, J.
 

 {Dissenting).
 
 — The question in what cases evidence of the general good character of a witness may be received, or the principle upon which such evidence rests, notwithstanding the numerous decided cases, ánd^ the various speculations of elementary writers on the subject, does not seem to be yet entirely settled, or, at least, not generally understood.
 

 In the case of
 
 People
 
 v.
 
 Rector
 
 (19 Wend. 569), it was held, that where the
 
 general moral character
 
 of a witness is impeached, whether by witnesses called for that purpose, * qoo
 
 i
 
 or
 
 on *^s own CT0SS'exam^na^0ni
 
 It is competent -1 for the party calling him, to adduce testimony in support of his character for truth and veracity, so that the jury may pass upon his credit. In that case, Gillespie, the witness in question, had testified upon his cross-examination to facts not material to the issue, and which were confessedly collateral to it, but which, nevertheless, had a tendency to affect his moral character and to discredit him with the jury. If they had been material and pertinent.to the issue, the court would have held, as I infer from the opinion of Justice Co wen, that general evidence of good character would not have been received. The. case of
 
 Carter
 
 v.
 
 People
 
 (2 Hill 317) was decided upon the same point, according to the principle of
 
 Rector’s
 
 case.
 

 People
 
 v.
 
 Hulse
 
 (3 Hill 309) has been supposed to shake toe authority of the case of
 
 Rector;
 
 but it seems to me,
 
 *382
 
 this is a mistake. In the case of
 
 Ilulse,
 
 the cross-examination of the witness did not extend beyond matters pertinent to the issue, and in such a case, as the court sav, the public prosecutor was not at liberty to call witnesses to sustain the good character of the witness. Bronson, J., says: "In the
 
 People
 
 v. Rector, it was shown by the cross-examination, that the witness was a man of grossly immoral habits and conduct, and it was held, that evidence was admissible in reply, to show that the general character of the witness for truth was good.” He proceeds to say, that “the rule with us then seems to be this: where a party attacks the general character of a witness on the other side, either by calling impeaching witnesses, or by drawing out extrinsic facts, going to prove general character, on the cross-examination, sustaining evidence may be given in reply.”
 

 A party may, upon the cross-examination of a witness, introduced by his adversary, ask him collateral questions, upon matters entirely disconnected with the issue, the answers to which may tend to degrade and discredit him, and the "witness may, in general, do as he pleases about answering them. If he does answer them, and his answers are of a character to degrade him, or to produce an unfavorable impression *upon the minds of the jury in regard to his character for truthful- ^ ness, he stands to some extent impeached and discredited. The facts so drawn out on cross-examination are entirely immaterial to the question at issue, and are only admissible, upon the ground, that as their usual, if not necessary, concomitant is a depraved moral standard, the evidence given by the witness, which is pertinent to the issue, is less reliable, and when weighed against other evidence in the case, the jury might be justified in disregarding it altogether; and this I understand to be the principle upon which evidence of reputation is received of the character of a witness. If a witness’ conduct has been such as to fix upon him the judgment of the com
 
 *383
 
 munity in which he resides, and where he is known, a particular character in any respect, that judgment is presumed to be correct, until the contrary is proved. If it be, that he is immoral or habitually guilty of conduct inconsistent with honesty or morality, and the judgment be true, it needs no argument to show that evidence derived from such a witness is not to be relied upon; the source is polluted. The only security for its truth is the chance, in the mind of the witness, of escape from detection, in case he swears falsely; it is bereft of the highest sanction and greatest safeguard — a good conscience and an honest purpose. In both cases, where the witness impeaches himself by admitting his own delinquencies on the stand, and where impeaching evidence is produced against him by evidence of general reputation, the result is this, his character is affected unfavorably;. in neither case, is the evidence conclusive; and I am not able to perceive, why his credit may not be repaired by the same kind of proof in the one case as in the other.
 

 It is claimed, that the evidence of Wood, on his cross-examination, related to isolated facts and circumstances, and did not affect his general moral character, and, therefore, was not to be met by evidence of general good character. It seems to me, such a distinction is not warranted by the reason and good sense of the case. A reference to the cross-examination will show that Wood was * 384 1 n°* °n^ a susPec*e<^ *person, but that proceed- -* ings had been in several instances instituted, with a view to punish him for perjury. It is said, he was at liberty to explain the transactions and deny his guilt; but would that restore him to confidence ? And would it not, with propriety, be said, that his denial of guilt was to be expected as a matter of course ? His character would still labor under the odium occasioned by the prosecution, and all the explanations he could give would not wipe out the reproach.
 

 The true distinction, I apprehend, is the one drawn by
 
 *384
 
 Justice Bronson in the case of
 
 People
 
 v.
 
 Hulse,
 
 between a case where the cross-examination is confined to topics pertinent to the issue upon trial, and where it is entirely collateral to the issue, and only tends to impair the credit of the witness. In the latter case, evidence of general reputation that his character for truth is good, or which goes to repair his character thus presumptively damaged, is admissible, while in the former, although the cross-examination may have incidentally impaired his credit, yet it is not to be restored by evidence of general reputation.
 

 In the case now under consideration, the cross-examination had not the remotest relation to the issue, and its only possible object or effect was, to impeach the credit of the witness. It is in no wise distinguishable in principle from the cases of
 
 Rector
 
 and
 
 Carter
 
 before referred to; and I have shown, that neither the decision nor the reasoning of the court in the case of
 
 Hulse,
 
 conflict with the decisions in the two former cases. If the foregoing views be correct, it follows, that the judgment of the supreme court and that of the oyer and terminer should be reversed.
 

 Btjggles, O. J., also dissented.
 

 Judgment affirmed.
 
 [2]
 

 [2]
 

 To the same effect, see Frost v. McCarger, 29 Barb. 617 ; Hannah v. McKellip, 49 Ibid. 342 ; Leonori
 
 v.
 
 Bishop, 4 Duer 420 ; Colt
 
 v.
 
 People, 1 Park. 611.